T.C. Memo. 2001-320


UNITED STATES TAX COURT


JAMES TRIPLETT, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 19527-97.          Filed December 27, 2001.


James Triplett, pro se.

Richard J. Hassebrock, for respondent.


MEMORANDUM OPINION


DAWSON, Judge:  This case was heard by Special Trial Judge Lewis R. Carluzzo pursuant to section 7443A(b)(4) of the Internal Revenue Code of 1986, as amended, in effect at the time the petition was filed in this case, and Rules 180, 181, and 183 of the Tax Court Rules of Practice and Procedure.  Unless otherwise indicated, subsequent section references are to the Internal

Revenue Code, as amended, in effect for 1993.  The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below.

## OPINION OF THE SPECIAL TRIAL JUDGE

CARLUZZO, Special Trial Judge:  Respondent determined a deficiency of $8,922 in petitioner's 1993 Federal income tax and a section 6662 penalty of $1,784.

The issues for decision are:  (1) Whether petitioner is entitled to any of the deductions claimed on a Schedule C, Profit or Loss From Business, included with his 1993 Federal income tax return; (2) whether petitioner is entitled to a credit for what is identified as a "carry forward loss" on his 1993 return; (3) whether petitioner is entitled to exclude from income or defer the gain realized from the sale of his residence; and (4) whether any underpayment of tax required to be shown on petitioner's 1993 return is due to negligence.

## Background

Some of the facts have been stipulated and are so found. At the time that the petition was filed, petitioner resided in Columbus, Ohio.

In 1992, petitioner was convicted of filing a false 1984 Federal income tax return.  As a result, among other sanctions, he was ordered to "pay a fine to the United States in the amount of ten thousand ($10,000) dollars".  As best as can be determined

from the record, the $10,000 fine was paid by petitioner during 1993.

On June 30, 1993, petitioner sold a condominium located at 2793 Chateau Circle, Columbus, Ohio (the condominium), that he used as his residence for an unspecified period.[1]  Thereafter, he moved into an apartment in an 18 unit apartment building located at 104 W. Main Street, Columbus, Ohio (the apartment building) that he owned.[2]  Some or all of the other apartments in the apartment building were rented out, or held for rent by petitioner during 1993.

Petitioner prepared his 1993 Federal income tax return. Included with that return are: (1) A Schedule E, Supplemental Income and Loss; (2) a Schedule C, Profit or Loss From Business; and (3) a Form 2119, Sale of Your Home.

The income and deductions attributable to the apartment building are reported on the Schedule E as follows:

---

[1]  Petitioner's 1988 Federal income tax return, dated October 15, 1989, lists 85 East Gay St., Suite 804, Columbus, Ohio, as his then present home address.  His 1989 Federal income tax return, dated July 31, 1990, indicates that as of that date his home address was the address of the condominium.

[2]  A review of petitioner's Federal income tax returns indicates that he has owned the apartment building since at least 1987.  A Schedule E, Supplemental Income Schedule, included with petitioner's 1987 Federal income tax return, lists the apartment building as rental property.

```
Rents Received:              $39,814

Expenses:
  Advertising                 2,355
  Repairs                     2,921
  Utilities                   5,316

Income                       29,222
```

On the Schedule C, petitioner described his "Principal business or profession" as "104 West Main St.", which is the address of the apartment building.  He made no entry on the line designated "Business address".  There is no income reported on the Schedule C, but the following deductions are claimed:[3]

```
          Advertising                 $     90.00
          Car and truck                   900.15
          Employee benefit programs       143.79
          Mortgage interest             1,426.48
          Other interest                4,560.00
          Legal and professional
            services                   29,126.79
          Repairs and maintenance       2,848.74
          Taxes and licenses            1,690.00
          Travel, meals and
            entertainment                 373.88

          Total expenses/net loss      41,159.83
```

Included in the deduction for legal and professional services is the $10,000 fine imposed as a result of petitioner's conviction for filing a false 1984 Federal income tax return.

The sale of the condominium is reported on the Form 2119. According to that form, petitioner realized a $17,500 gain on the sale, which gain is included as long term capital gain in the

---

[3]  According to the form, petitioner reported Schedule C items in accordance with the cash method of accounting.

income reported on his 1993 return. Petitioner made no entries on Part III of the form (One-Time Exclusion of Gain for People Age 55 or Older). Nor did he make any entries on Part IV of the form (Adjusted Sales Price, Taxable Gain, and Adjusted Basis of New Home) relevant to whether the gain from the sale of the condominium must be deferred. In a Form 1040X, Amended U.S. Individual Income Tax Return, received by respondent on April 15, 1997, petitioner reduced the adjusted gross income reported on his 1993 return by $17,500.[4] According to the explanation contained in the amended return, the reduction results from petitioner's "option to change reporting capital gain on house".

Petitioner also claimed what is described as a "carry forward loss" credit of $138,555.16 on his 1993 return. The details supporting the computation of this item are not included on the return.

The notice of deficiency upon which this case is based contains adjustments to petitioner's income as reported on his original return, although the notice addresses items reported on

---

[4] Petitioner first filed a Form 1040X for 1993 on June 10, 1996. In that amended return he eliminated the $10,000 deduction for the fine claimed on his original return. He again claimed entitlement to the deduction in the amended return filed April 15, 1997. Apparently, neither amended return was processed by respondent.

amended returns.[5]  In the notice of deficiency, respondent:
(1) Disallowed all of the deductions claimed on the Schedule C
because petitioner failed to establish "that any amount was paid
for the designated purpose or that the expenditure, if paid,
constitutes an ordinary and necessary business expense"; (2)
disallowed the "carry forward loss" credit because "there is no
provision in the Internal Revenue Code for such a credit" and
because petitioner "did not sustain a net operating loss * * * in
any taxable year prior to 1993"; and (3) determined that the
entire understatement of tax required to be shown on petitioner's
1993 return is due to negligence and imposed a section 6662
accuracy-related penalty.

<u>Discussion</u>

1.   <u>Schedule C Deductions</u>

Section 162(a) allows a deduction for ordinary and necessary
expenses paid or incurred during the taxable year in carrying on
a trade or business.  In the case of a taxpayer who uses the cash
method of accounting, entitlement to a section 162(a) deduction
presupposes that the taxpayer can substantiate by sufficient
records that the underlying expense has been paid.  Sec. 6001;
sec. 1.6001-1(a), (e), Income Tax Regs.; see also sec. 446; sec.

---

[5]  E.g., according to the notice of deficiency, the gain
realized from the sale of the condominium is includable in
petitioner's 1993 income because he has "not established the
requirements of section 121 or section 1034 * * * have been met".

1.446-1, Income Tax Regs.

According to the explanation contained in the notice of deficiency, all of the deductions claimed on the Schedule C were disallowed for lack of substantiation. It appears that respondent now agrees, or at least does not dispute, that during 1993 petitioner paid the $10,000 fine imposed in connection with his 1984 criminal tax conviction.[6] Nevertheless, petitioner is not entitled to a deduction for the payment of the fine because "no deduction shall be allowed * * * for any fine or similar penalty paid to a government for the violation of any law." Sec. 162(f).

With respect to the other deductions claimed on the Schedule C, we agree with respondent that petitioner has failed to provide adequate substantiation that the underlying expenses have been paid. At trial, petitioner presented a manila folder filled with bundles of records from 1993. The bundles include assorted photocopies of invoices, bills, statements, and receipts. There is no spreadsheet or other document that explains how these records correspond to the specific deductions claimed on the Schedule C, and petitioner was unable to provide such an explanation at trial. Many of the invoices, bills, statements,

---

[6] According to petitioner, the $10,000 payment he made to the Government was not a "fine", but reimbursement to the United States for the litigation costs incurred in connection with his criminal tax conviction.

and receipts that petitioner could explain relate to expenses paid or incurred in connection with his rental real estate activities, which expenses appear to have been deducted on the Schedule E.  Furthermore, certain invoices, bills, statements, and receipts seem to involve personal, nondeductible expenses. See sec. 262(a).

We see no connection between the Schedule C deductions here in dispute and the records offered by petitioner to substantiate those deductions.  Furthermore, we find nothing in those records that supports petitioner's suggestion at trial that he is entitled to deductions not claimed on his return.  Respondent's disallowance of all of the deductions claimed on the Schedule C is sustained.

2.  "Carry Forward Loss" Credit/Net Operating Loss

Petitioner claimed a $138,555.16 credit for a "carry forward loss".  At trial, petitioner attempted to explain how he computed this amount, but we are unable to follow his explanation.[7]  Our

---

[7] On brief petitioner acknowledged, properly so, that his prior reliance on sec. 39 as support for the credit was misplaced.
Sec. 172 allows a deduction for a net operating loss (NOL), which may be carried back to years preceding the year of the loss and carried over to years following the year of the loss.  Sec. 172(b).  The item here in dispute is described as a "carry forward loss credit".  If petitioner intended, albeit inartfully, to deduct an NOL carryover, the deduction would have to be denied because he failed to establish that: (1) He sustained an NOL prior to 1993; and (2) any portion of the NOL was available to carry over into 1993.  The copies of petitioner's Federal income

(continued...)

failure to grasp the factual basis for the computation, however, does not deter us from ruling on petitioner's entitlement to the credit. Simply put, there is no provision in the Internal Revenue Code that allows such a credit. Respondent's disallowance of the "carry forward loss" credit is sustained.

3.    Gain From the Sale of the Condominium

In 1993, petitioner apparently realized a $17,500 gain on the sale of the condominium. He included that gain in the income he reported on his 1993 return but now argues that he should not have done so.

In general, a taxpayer is required to include in income for the year of sale any gain realized on the sale of property. Secs. 61, 1001. For 1993, section 121[8] permitted certain taxpayers (55 years old and older) to exclude from gross income up to $125,000 of gain from the sale of property which they had owned and used as their principal residence for 3 or more of the

-----

[7](...continued)
tax returns for prior years and a Form 1045, Application for Tentative Refund, for 1991, without more, are not sufficient to establish either point. Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979).

[8]   Sec. 121 was amended by sec. 312(a) of the Taxpayer Relief Act of 1997 (TRA 1997), Pub. L. 105-34, 111 Stat. 836, effective for sales after May 6, 1997.

5 years immediately before the sale.  For 1993, section 1034[9] required a taxpayer, in certain circumstances, to defer recognition of gain realized on the sale of the taxpayer's old principal residence if a new residence is purchased and used by the taxpayer as a new principal residence within the period beginning 2 years before the date of the sale and ending 2 years after the date.

There is insufficient information in the record that would allow for the application of section 121 to the sale of the condominium.  It cannot be determined whether petitioner used the condominium as his principal residence for the requisite period or whether he met the age requirement.  Likewise, there is insufficient information in the record that would allow for the application of section 1034 to the sale of the condominium.  It cannot be determined whether petitioner purchased and used as his residence a new principal residence within the period beginning 2 years before the date of the sale and ending 2 years after the date.  Because we cannot find that the requirements of either section 121 or section 1034 have been met, the gain petitioner realized from the sale of the condominium is includable in his 1993 income, and we so hold.

---

[9] Sec. 1034 was repealed by TRA 1997 sec. 312(b), 111 Stat. 839, generally effective for sales and exchanges of principal residences after May 6, 1997.  The sec. 1034 rollover provision was replaced by an expanded and revised sec. 121.

4.    <u>Negligence Penalty</u>

Section 6662(a) imposes an accuracy-related penalty of 20 percent on any portion of an underpayment of tax that is attributable to negligence or disregard of rules or regulations. Section 6662(c) defines "negligence" to include any failure to make a reasonable attempt to comply with the Internal Revenue Code or to exercise ordinary and reasonable care in the preparation of a tax return. "Negligence" also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs. Section 6662(c) also defines "disregard" to include any careless, reckless, or intentional disregard of rules or regulations. The negligence penalty does not apply to any portion of an underpayment if it is shown that there was reasonable cause for such portion and the taxpayer acted in good faith with respect thereto. Sec. 6664(c)(1).

Contrary to section 162(f), which specifically provides that fines are not deductible, petitioner claimed a deduction for the $10,000 fine he paid to the United States in connection with his criminal tax prosecution. Other deductions claimed on the Schedule C could not be substantiated, some of which appear to relate to personal expenses. We see no factual basis and there is certainly no legal basis for the substantial "carry forward loss" credit claimed on petitioner's 1993 return. Petitioner's

explanations with respect to these items were vague and at times nonsensical.

Petitioner failed to establish that the errors made on his 1993 Federal income tax return were due to reasonable cause. Consequently, respondent's determination that petitioner is liable for the negligence penalty for 1993 is sustained.

Based on the foregoing,

<u>Decision will be</u>

<u>entered for respondent.</u>